Dariush Keyhani (DK-9673)
Jennifer Meredith (JM-4816)
Meredith & Keyhani, PLLC
330 Madison Avenue
6th Floor
New York, New York 10017
Phone: (212) 760-0098
Facsimile (212) 202-3819
*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Mei L. Wang, Michael Y. J. Wang, Chun Fang Wang, <br><br> Plaintiffs, <br><br> v. <br><br> CYR International, Inc., Chew Young Roo America, Inc., CYR USA, Inc., Chew Young Roo, Inc., Chew Young Roo, Chew Young Roo, Eun Chan Lim, <br><br> Defendants. | Civil Action No.: <br><br> 07-cv-05462 (BSJ) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AGAINST DEFENDANTS CHEW YOUNG ROO CLOSTER NEW JERSEY, CHEW YOUNG ROO FORT LEE NEW JERSEY, AND CHEW YOUNG ROO PENNSYLVANIA**

I.  **INTRODUCTION**

Defendants Chew Young Roo, Inc. (hereinafter "Chew Young Roo Pennsylvania"), located at 7050 Terminal Square #213, Upper Darby, PA 19082; Chew Young Roo, located at 570 Piermont Road, Closter, NJ 07624 (hereinafter "Chew Young Roo Closter New Jersey"); and Chew Young Roo, located at 1550 Lemoine Avenue, Fort Lee, NJ 07024 (hereinafter "Chew Young Roo Fort Lee New Jersey")--hereinafter collectively "New Jersey and Pennsylvania Chew Young Roo restaurants" or "New Jersey and Pennsylvania Defendants"—have, without authorization or consent, misappropriated Plaintiffs' registered trademark "CHU YING LO" (hereinafter Plaintiffs' Trademarks) for use in connection with the same business of restaurant dining, catering, and take-out Chinese and Korean-Chinese food.

Plaintiffs have been in the business of dining, catering, and take-out Chinese and Korean-Chinese food in the New York tri-state area using their trademark "CHU YING LO" for almost twenty-one (21) years. (Affidavit of Michael Y.J. Wang (hereinafter "Wang Aff.") ¶ 3)  Because of the recognized high quality of Plaintiffs' restaurant, food, dining, and catering services, as well as extensive marketing and promotional efforts over many years, Plaintiffs' business and associated CHU YING LO trademark have become famous and well-known for many years among customers of Chinese and Korean-Chinese food in the New York tri-state area (Wang Aff. ¶ 5).

The New Jersey and Pennsylvania Defendants were well aware of Plaintiffs' restaurant and catering services and Plaintiffs' Trademarks when they decided to incorporate the identical and/or confusingly similar mark for the same business and services (Wang Aff. ¶ 9).  The Defendants have willfully infringed and continue to infringe Plaintiffs' Trademarks by aggressively targeting Plaintiffs' customers on TV, radio, and in daily newspapers in the New York tri-state area (Wang Aff. ¶ 10). Defendants' use of Plaintiffs' Trademarks has caused irreparable harm and damage to Plaintiffs and their business (Wang Aff. ¶¶ 6-14).  This is one of those rare cases where there exists evidence of actual consumer confusion, including dozens of customers having contacted the Plaintiffs inquiring as to whether Defendants' restaurants were affiliated with the Plaintiffs (Wang Aff. ¶¶ 6-8 and attached Exhibit A, record of confused consumers).

In 2007, dozens of customers came to Plaintiffs' restaurant congratulating Plaintiffs on their opening restaurants in Closter, New Jersey; Fort Lee, New Jersey; and Upper Darby, Pennsylvania. It was at this point that Plaintiffs first became aware of Defendants Chew Young Roo Closter New Jersey, Chew Young Roo Fort Lee New Jersey, and Chew Young Roo Pennsylvania. Defendants have clearly intended to capitalize on Plaintiffs' Trademarks, reputation, and goodwill. Without Plaintiffs' authorization, Defendants have operated in plain violation of Plaintiffs' trademark rights and have caused actual consumer confusion. Furthermore, Defendants made numerous statements in which they expressed direct disregard for Plaintiffs' rights (Complaint Exhibits H and G). Plaintiffs continually receive inquiries from their customers and business associates about Plaintiffs' affiliation with the New Jersey and Pennsylvania Chew Young Roo restaurants. Defendants use trademarks (utilizing Chinese, Korean, and English language and designs) that are confusingly similar to Plaintiffs' Trademarks. (Complaint Exhibit C) Defendants' infringing use of Plaintiffs' Trademarks has caused actual confusion among customers. Despite being warned of the infringing activities, Defendants continue them. Defendants grossly and recklessly disregarded federal trademark law and common laws that protect Plaintiffs' Trademarks and a more-than-quarter-century investment in and accumulation of goodwill.

Defendants' willful and intentional infringement of Plaintiffs' Trademarks has and continues to irreparably harm Plaintiffs, Plaintiffs' goodwill, and Plaintiffs' rightful market position. Accordingly, Plaintiffs urge that this Court issue an order granting Plaintiffs' Motion for a Preliminary Injunction against Defendants Chew Young Roo Closter New Jersey, Chew Young Roo Fort Lee New Jersey, and Chew Young Roo Pennsylvania, immediately enjoining them from using Plaintiffs' Trademarks in identifying, promoting, or advertising their establishments, and in any other activity related to Defendants' establishments.

II. **DEFENDANTS MUST BE IMMEDIATELY ENJOINED UNDER THE LANHAM ACT AND COMMON LAW FROM INFRINGING PLAINTIFFS' TRADEMARKS AND PLAINTIFFS' GOODWILL**

Once a violation of the Trademark Act of 1946, 15 U.S.C. § 1051, et seq., as amended (the "Lanham Act"), is demonstrated, injunctive relief will readily issue pursuant to Section 34 thereof, 15 U.S.C. §1116. See, e.g., Dallas Cowboys Cheerleaders v. Pussycat Cinema, Ltd., 604 F.2d 200, 205 (2d Cir. 1979); Boston Professional Hockey Ass'n v. Dallas Cap Emblem MFG., Inc., 510 F. 2d 1004, 1013 (5th Cir.), cert. denied, 423 U.S. 868 (1975); Warner Bros., Inc., v. Gay Toys, Inc., 658 F.2d 76 (2d Cir. 1981).

"To obtain a preliminary injunction, a plaintiff must establish: '(1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly' in its favor." Malletier v. Burlington Coat Factory Warehouse Corp., 426 F.3d 532, 537 (2d Cir.2005) (quoting Federal Express Corp. v. Federal Espresso, Inc., 201 F.3d 168, 173 (2d Cir.2000)). "In trademark disputes, 'a showing of likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm.'" Malletier, 426 F.3d at 537 (quoting Hasbro, Inc., v. Lanard Toys, Ltd., 858 F.2d 70, 73 (2d Cir.1988)). See also Caulfield v. Board of Education of City of New York, 583 F.2d 605, 610 (2d Cir. 1978); Markel v. Scovill Mfg. Co., 471 F.Supp. 1244, 1247 (W.D.N.Y.1979), aff'd mem. 610 F.2d 807 (2d Cir. 1979). Where it can be shown that a likelihood of consumer confusion exists, the defendant's actions should be enjoined. See Church of Scientology Int'l v. Elmira Mission of the Church of Scientology, 794 F.2d 38, 41 (2d Cir. 1986) ("we have consistently held that a preliminary injunction should usually issue when the use of a mark creates a likelihood of confusion in the consumers' minds as to the ownership or sponsorship of a product").

In addition, as the New York Court of Appeals held in Allied Maintenance Corp. v. Allied Mechanical Trades, Inc., 42 N.Y.2d 538, 399 N.Y.S.2d 628, 632, 369 N.E.2d 1162 (1977), under New York law, for dilution of a trademark to obtain injunctive relief, Plaintiffs need only show that marks-in-suit are substantially similar, because showing a likelihood of confusion is not necessary. (McKinney's General Business Law § 360-i)

See, e.g., Fibermark, Inc., v. Brownville Specialty Paper Products, Inc., 419 F.Supp.2d 225 (2005); MetLife, Inc., v. Metropolitan Nat. Bank, 388 F.Supp.2d 223 (S.D.N.Y. 2005).

### A. Likelihood of Success on the Merits

Section 43(a) of the Lanham Act prohibits unauthorized use of someone else's trademark and deems liable for false designation of origin "[a]ny person who . . . uses in commerce any container for goods . . . name, symbol, device . . . or any false designation of origin . . . which is likely to cause confusion." 15 U.S.C. § 1125(a); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 155 (2d Cir.2002). Liability is established under 43(a) of the Lanham Act if a plaintiff can demonstrate (1) that it has a valid trademark entitled to protection under the Act, and (2) defendant's actions are "likely to cause confusion." Arrow Fastener v. Stanley Works, 59 F.3d 384, 390 (2d Cir.1995). In considering the likelihood of confusion, district courts generally apply eight nonexclusive factors, known as the Polaroid factors: (1) the strength of the plaintiff's mark; (2) the similarity of plaintiff's and defendant's marks; (3) the competitive proximity of their products; (4) the likelihood that plaintiff will "bridge the gap" and offer a product like defendant's; (5) actual confusion between products; (6) defendant's good faith; (7) the quality of defendant's product as compared to plaintiff's; and (8) the sophistication of the purchasers. Streetwise Maps, Inc., v. VanDam, Inc., 159 F.3d 739, 742-43 (2d Cir.1998) (citing Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir.1961). The Arrow Court noted that no one of the Polaroid factors is dispositive, and the list is not exhaustive; "the analysis of the factors is not a mechanical process." Id. at 391.

Polaroid Factor 1: The strength of the plaintiff's mark

Plaintiffs' mark "CHU YING LO" is a strong and well-recognized trademark. The U.S. Patent & Trademark office has recorded this mark on its Principal register. Defendants have not contested this registration. According to the PaperCutter Court, the registration, especially to the Principal Register, creates the presumption that

Plaintiffs' mark is inherently distinctive. <u>PaperCutter, Inc. v. Fay's Drug Co.</u>, 900 F.2d 558, 563 (2d Cir.1990).

Plaintiffs have been in the business of dining, catering, and take-out Chinese and Korean-Chinese food in the New York tri-state area using their trademark "CHU YING LO" for almost twenty-one (21) years. (Wang Aff. ¶ 3)  Plaintiffs' mark is distinctively identified with Plaintiffs' business of dining, catering, and take-out Chinese and Korean-Chinese food in the New York tri-state area.  Plaintiffs' establishment has become a fixture in the tri-state area Korean community and the place where customers go to enjoy fine, first-rate, original, and authentic Chinese and Korean-Chinese cuisine.  Since at least 1988 Plaintiffs have spent tens of thousands of dollars in promoting their mark. [needs additional affidavit for that].

Because of the recognized high quality of Plaintiffs' restaurant, food, dining, and catering services, as well as extensive marketing and promotional efforts over many years, Plaintiffs' business and the associated CHU YING LO trademark have become famous and well-known for many years among customers of Chinese and Korean-Chinese food in the New York tri-state area.  (Wang Aff. ¶ 5) Therefore, this <u>Polaroid</u> factor strongly favors Plaintiffs.


<u>Polaroid Factor 2:  The similarity of plaintiff's and defendant's marks</u>

Defendants use marks (utilizing Chinese, Korean, and English language and designs) that are confusingly similar to Plaintiffs' Trademarks.  Defendants' "CHEW YOUNG ROO" mark, which is used for their New Jersey and Pennsylvania restaurants, is the English phonetic for "Chu Ying Lo" when pronounced in Korean (Hangul).  Both marks sound identically for relevant consumers.  The New Jersey and Pennsylvania Chew Young Roo restaurants use Chinese, Korean, and English characters of the English

phonetic "CHU YING LO" that are all recognized by Plaintiffs' customers to be associated with Plaintiffs' restaurant.

Additionally, translation into English by relevant consumers of Plaintiffs' mark and Defendants' mark results in identical meanings. (Wang Aff. ¶ 9) The Second Circuit has consistently upheld a ruling of infringement when the Court found marks sound confusingly similar to the relevant consumer. <u>Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons</u>, 523 F.2d 1331, 186 U.S.P.Q. 436 (2d Cir. 1975). Therefore, this <u>Polaroid</u> factor also strongly favors Plaintiffs.

Polaroid Factor 3: The competitive proximity of the products

Like Plaintiffs, Defendants use their marks in the operation of restaurants that offer dining, catering, and take-out Chinese and Korean-Chinese food. Like Plaintiffs, Defendants target the same relevant consumers who live in the vicinity of the tri-sate area and enjoy Chinese and Korean-Chinese cuisines, particularly customers of Korean and Chinese descent. (Wang Aff. ¶¶ 3, 5) Defendants have been conducting extensive marketing campaigns that include substantial daily advertisement presence on major Korean media outlets, such as Korean daily newspapers, Korean radio, and Korean television. (Wang Aff. ¶ 10) Therefore, this <u>Polaroid</u> factor also strongly favors Plaintiffs.

Polaroid Factor 4: The likelihood that plaintiff will "bridge the gap" and offer a product like defendant's

This <u>Polaroid</u> factor also strongly favors Plaintiffs, because there is no gap to be bridged: Defendants entered the market precisely in order to offer products like the Plaintiffs' under a mark confusingly similar to Plaintiffs'.

Polaroid Factor 5: Actual confusion between products

The Second Circuit has held that evidence of actual confusion is clear evidence of a likelihood of confusion for the determination of trademark infringement. <u>Morningside Group Ltd. v. Morningside Capital Group, L.L.C.</u>, 182 F.3d 133, 141, 51 U.S.P.Q.2d 1183 (2d Cir. 1999) ("evidence that confusion has actually occurred is of course convincing evidence that confusion is likely to occur."); <u>TCPIP Holding Co., Inc., v. Haar Communications, Inc.</u>, 244 F.3d 88, 102, 57 U.S.P.Q.2d 1969 (2d Cir. 2001) ("When two marks have existed side by side in commerce, the evidence of actual confusion among consumers, or of absence of confusion, can be very helpful in determining whether a likelihood of confusion results from the junior's use of a mark similar to the senior mark."); <u>Virgin Enterprises Ltd. v. Nawab</u>, 335 F.3d 141, 151, 67 U.S.P.Q.2d 1420 (2d Cir. 2003) ("It is self-evident that the existence of actual consumer confusion indicates a likelihood of consumer confusion.").

It is undisputed that the relevant customers have been actually confused by Defendants' infringing conduct. Plaintiffs have received a flurry of inquiries from their former and current employees and business associates about Plaintiffs' affiliation with Defendants' establishments. (Wang Aff. ¶¶ 6-8 and attached Exhibit A, record of confused consumers) Dozens of customers have contacted the Plaintiffs inquiring whether Defendants' restaurants were affiliated with the Plaintiffs. (Wang Aff. ¶¶ 6-8 and attached Exhibit A, record of confused consumers) During 2007, dozens of customers have come to Plaintiffs' restaurant congratulating Plaintiffs on their opening restaurants in Closter, New Jersey; Fort Lee, New Jersey; and Upper Darby, Pennsylvania. (Wang Aff. ¶ 6) It was at this point that Plaintiffs first became aware of Defendants Chew Young Roo Closter New Jersey, Chew Young Roo Fort Lee New Jersey, and Chew Young Roo Pennsylvania. (Wang Aff. ¶ 6) In total, during this time Plaintiffs have received over one thousand congratulatory remarks from customers confused about Plaintiffs' affiliation with Defendants' businesses. (Wang Aff. ¶¶ 7-8)

These inquiries are clear proof of actual confusion in the relevant consumer market and, as the Second Circuit has held, are proof of a likelihood of success on the

merits on the issue of infringement. Therefore, this <u>Polaroid</u> factor also most strongly favors Plaintiffs.

Polaroid Factor 6:  The defendant's good faith

Defendants have continued to infringe Plaintiffs' Trademarks in bad faith. Plaintiffs' have sent Defendants cease-and-desist letters, which have been ignored, directing Defendants to refrain immediately from using Plaintiffs' Trademarks.  Even in the face of the present lawsuit, Defendants have not been responsive, ignoring this Court, and have continued their operations in willful disregard of Plaintiffs' rights. (Affidavit of Dariush Keyhani (hereinafter "Keyhani Aff.") ¶¶ 8-9)   Therefore, this <u>Polaroid</u> factor additionally most strongly favors Plaintiffs.

The remaining <u>Polaroid</u> factors also strongly favor Plaintiffs because the relevant group of customers has been actually confused as to Plaintiffs' affiliation with Defendants' businesses.

Therefore, based on the above analysis of <u>Polaroid</u> factors, Plaintiffs will likely succeed on the merits both under the Lanham Act and New York law.

    **B.**    **Defendants' Continued use of Plaintiffs' Trademark is Irreparably Harming Plaintiffs**

The Second Circuit has stated that establishing a high probability of confusion as to source or sponsorship inevitably establishes irreparable harm to a trademark owner. <u>Home Box Office, Inc., v. Showtime/ Movie Channel, Inc.</u>, 832 F.2d 1311 (2d Cir. 1987) ("a showing of likelihood of confusion as to source or sponsorship established the risk of irreparable harm as well as the requisite likelihood of success on the merits").   Plaintiffs have demonstrated a likelihood of confusion, and "proof of a likelihood of confusion establishes . . . irreparable harm." <u>Brennan's Inc. v. Brennan's Restaurant, L.L.C.</u>, 360 F.3d 125, 129 (2d Cir.2004).   The Court of Appeals has stated that "a presumption of irreparable harm arises in Lanham Act cases once the plaintiff establishes likelihood of

success," King v. Innovation Books, 976 F.2d 824, 831 (2d Cir.1992), that "a preliminary injunction should usually issue when the use of a mark creates a likelihood of confusion," Church of Scientology Int'l v. Elmira Mission of the Church of Scientology, 794 F.2d 38, 41 (2d Cir.1986), and that "a showing of confusion . . . ordinarily will establish that a risk of irreparable harm exists," Gen. Motors Corp. v. Gibson Chem. & Oil Corp., 786 F.2d 105, 109 (2d Cir.1986).

In Omega Imp. Corp. v. Petri-Kine Camera Co., 451 F.2d 1190 (2d Cir 1971), the Court of Appeals stated that irreparable harm "almost inevitably follows" from a likelihood of confusion for a number of reasons: it is difficult to calculate the profits a defendant obtained, and that would therefore be disgorged, due to its use of plaintiff's mark; confusion may cause consumers to reject both plaintiff's and defendant's products; and calculating lost sales due to defendant's infringement is extremely difficult. Id. at 1195. These factors are present in virtually every case, which explains this Circuit's general rule that irreparable harm follows from likelihood of confusion.

If not enjoined, Defendants' continuing operation using marks confusingly similar to Plaintiffs' Trademarks will significantly harm and dissolve Plaintiffs' years-earned goodwill.  Plaintiffs have already suffered such overwhelming drop in revenue that if Defendants are not immediately stopped Plaintiffs will in short time be put out of business.

**The balance of equities tips sharply in favor of Plaintiffs**

The equities of this case tip sharply in favor of Plaintiffs, whose lawful trademarks are being unlawfully infringed. See Louis Vuitton S.A. v. Lee, 875 F.2d 584 (7th Cir. 1989) ("As between the 'innocent infringer' who seeks to get off scot-free, and the innocent infringed who has neither engaged in any inequitable conduct nor sought treble damages or treble profits or indeed any part of the defendant's profits that is attributable to the defendant's superior efficiency rather than to the plaintiff's trademark, the stronger equity is with the innocent infringed."); Estee Lauder, Inc., v. Watsky, 323 F. Supp. 1064, 1068 (S.D.N.Y. 1970).  The only effect of the injunction on the defendants will be to prevent them from engaging in illegal conduct. Hard Rock Cafe, 955 F.2d at 1143; Cartier Intern. B.V. v. Liu, 2003 WL 1900852, * 1-2 (S.D.N.Y. Apr. 17, 2003).

Defendants are newcomers and have been open to general public for a short period of time. Plaintiffs promptly acted to alert Defendants that Defendants' use of the confusingly similar mark is infringing, as soon as Plaintiffs were alerted about Defendants' infringing activity. Defendants decided to disregard Plaintiffs' rightful warning and chose to act unlawfully. If Defendants are not immediately stopped, Plaintiffs will lose the benefits and good will of the valuable trademark they have invested in for decades.

### III.   CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court issue an order granting Plaintiffs' Motion for a Preliminary Injunction against Defendants Chew Young Roo Closter New Jersey, Chew Young Roo Fort Lee New Jersey, and Chew Young Roo Pennsylvania, immediately enjoining them from using Plaintiffs' Trademarks in identifying, promoting, or advertising their establishments, and in any other activity related to Defendants' establishments.

Dated:  
February 16, 2008

Respectfully submitted,

s/Dariush Keyhani  
Dariush Keyhani (DK-9673  
Jennifer Meredith (JM-4816)  
Meredith & Keyhani, PLLC  
330 Madison Avenue  
6th Floor  
New York, New York 10017  
Phone: (212) 760-0098  
Facsimile (212) 202-3819  
*Attorneys for Plaintiffs*